Filed 2/27/23  P. v. Torres CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　　　v.<br><br>JESUS TORRES, JR.,<br><br>　　　Defendant and Appellant. | F080800<br><br>(Super. Ct. No. BF177592A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Eric Bradshaw, Judge.

Meredith Fahn, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

A jury convicted defendant Jesus Torres, Jr. of taking a motor vehicle without the owner's consent (Veh. Code, § 10851, subd. (a), count 1); receipt of a stolen vehicle (Pen. Code, § 496d, subd. (a), count 2);[1] and felony evading (Veh. Code, § 2800.2, subd. (a), count 3).[2] In a bifurcated trial, the trial court found true two prior felony auto convictions (§ 666.5, subd. (a)) as alleged in count 1. As to counts 1 and 3, the trial court imposed a total aggregate sentence of four years eight months.

During jury selection, the prosecutor excused eight prospective jurors, seven of whom were of Hispanic origin.[3] Trial counsel made a *Batson*/*Wheeler*[4] motion, which was subsequently denied by the trial court because she failed to establish a prima facie case of discrimination.

On appeal, defendant contends this case should be remanded because: (1) the trial court erred in denying the *Batson*/*Wheeler* motion because a prima facie case of discrimination existed based on the prosecutor using seven of her eight peremptory strikes on jurors of Hispanic origin; and (2) newly enacted Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567) and Assembly Bill No. 124 (2021–2022 Reg. Sess.) (Assembly Bill 124) apply retroactively to his case, and he is entitled be resentenced consistent with the changes to newly amended section 1170. The People concede these recent amendments to section 1170 apply retroactively, but contend resentencing is unnecessary because any error by the trial court was harmless.

---

[1] All further references are to the Penal Code, unless otherwise stated.

[2] Defendant was convicted of further offenses and enhancements as discussed *post*.

[3] The probation report indicates defendant is Hispanic.

[4] *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*); *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*).

We conclude defendant is entitled to be resentenced consistent with the changes to section 1170.  Therefore, we vacate the sentence and remand for resentencing.  In all other respects, we affirm the judgment.

## STATEMENT OF THE CASE

On August 20, 2019, the Kern County District Attorney filed an information charging defendant with taking of a motor vehicle without the owner's consent (Veh. Code, § 10851, subd. (a), count 1); receipt of a stolen vehicle (§ 496d, subd. (a), count 2); felony evading (Veh. Code, § 2800.2, subd. (a), count 3); resisting, delaying, or obstructing a peace officer (§ 148, subd. (a)(1), count 4); possession of burglary tools (§ 466, count 5); vehicular hit and run causing property damage (Veh. Code, § 20002, subd. (a), count 6); and driving with a suspended driver's license (Veh. Code, § 14601.2, subd. (a), count 7).[5]  As to counts 1 and 2, it was alleged defendant suffered two prior felony auto theft convictions (§ 666.5, subd. (a)).  As to counts 1, 2, and 3, it was further alleged defendant suffered four prison prior enhancements (§ 667.5, subd. (b)).[6]

On January 9, 2020, a jury convicted defendant of counts 1, 3, 4, 5, and 6, and found defendant not guilty of count 2.  In a bifurcated court trial, the trial court found true two prior felony auto theft convictions (§ 666.5, subd. (a)) as alleged in count 1.  The trial court also found true that defendant violated his terms of mandatory supervision in Kern Superior Court case No. BF176097A.

As to count 1, the trial court sentenced defendant to the upper term of four years.[7]  As to count 3, the trial court sentenced defendant to a term of eight months (one-third the

---

[5]     The information further alleged defendant suffered six prior convictions for driving with a suspended driver's license (Veh. Code, § 14601.2, subd. (d)(2)).  Prior to the jury trial, defendant pled nolo contendere to count 7 and admitted the prior convictions.

[6]     Prior to the jury trial, as to counts 1, 2, and 3, the People moved to dismiss the four prison prior enhancements (§ 667.5, subd. (b)).  The trial court subsequently granted the People's motion.

[7]     Pursuant to section 666.5, subdivision (a), "Every person who, having been previously convicted of a felony violation of Section 10851 of the Vehicle Code … [and] is [then]

3.

middle term of three years) to be served consecutive to count 1. As to counts 4 through 6, the trial court sentenced defendant to 180 days custody to be served concurrent with counts 1 and 3. As to count 7, the trial court sentenced defendant to 364 days to be served concurrent with counts 1 and 3. As to the violation of mandatory supervision in Kern Superior Court case No. BF176097A, the trial court sentenced defendant to the middle term of three years to be served concurrent with counts 1 and 3. The total aggregate sentence imposed was four years eight months.

Defendant then filed a timely appeal.

## DISCUSSION

### I. The Trial Court Correctly Concluded Defendant Failed to Establish a Prima Facie Case of Discrimination for Purposes of *Batson/Wheeler*

On appeal, defendant contends the trial court erred in denying his *Batson/Wheeler* motion at the prima facie stage and thus, the judgment should be conditionally reversed. We disagree.

### A. Additional Factual Background

The trial court began the jury selection process on December 30, 2019, when it swore in the first panel of prospective jurors and began to address hardship excusals. After the trial court's excusals and juror nonappearances, 52 prospective jurors remained. Of the 52 remaining prospective jurors, 38 jurors had Spanish surnames (73 percent of the venire) and 31 jurors were female (59 percent of the venire).

After the prosecutor's eighth peremptory challenge, trial counsel made a *Batson/Wheeler* motion. At this time, 32 jurors had been called to the panel. The trial court excused five of these jurors for cause and of the remaining 27 jurors, 19 had Spanish surnames (70 percent of the panel) and 15 were female (56 percent of panel).

---

subsequently convicted of any of these offenses shall be punished by imprisonment … for two, three, or four years .…"

4.

Trial counsel alleged the prosecutor excluded jurors on the bases of race and gender. Specifically, trial counsel argued, "All eight jurors were minority jurors … seven were Hispanic. One was, I believe origin is Indian American. And out of the eight jurors that were excluded, six [were] females." Trial counsel also noted, "[T]here had been two jurors … original jurors" and "[b]oth of them are Caucasian jurors. Juror Number 1, [5024002], and Juror Number 6, [5039146], and they were not excluded, but every other juror that was excluded was non-Caucasian." The prosecutor responded, "I would just comment that based on the pool of the jury that we've been given, that is inevitable" and that "if we look at the list that we were given, it is a lot of Hispanic names. There has been a lot of people of Hispanic origin up there." The trial court agreed and stated, "I'm just looking at the names on this list, and even with the people coming up, and there's a lot of Spanish surnames on this list." Trial counsel "recognize[d] that this jury pool [did] have a lot of Hispanic last names," but argued her *Batson*/*Wheeler* motion should be granted based on the prosecutor's exclusion of jurors based on race and gender. However, the trial court disagreed and concluded that trial counsel failed to make a prima facie showing of a systematic exclusion of a group based on race or gender, but nonetheless provided the prosecutor the opportunity to make a record of a neutral reason(s) for the exclusions. The prosecutor argued the challenges were "related to people who have no life experience, who are students, who don't work or live at home … [a]nd that is what the kicks have been based on. And those are not a protected class under the current case law." The trial court then denied the motion without prejudice.

Below we describe in more depth the circumstances surrounding the prosecutor's peremptory challenges of the eight individual panelists who were the subject of the trial counsel's *Batson*/*Wheeler* motion.

### 1. *Prospective Juror No. 5003223 (Female, Hispanic)*

Juror No. 5003223 (Juror 5003223) lived with her parents and worked at a vacation rental.

Four years ago, Juror 5003223's brother was stabbed and killed, which resulted in a court proceeding in which the person responsible was released. She did not follow the court proceedings and stated this prior experience would not make her favor one side or the other in this case.

Juror 5003223's youngest brother was in the process of being criminally charged in Kern Superior Court and she did not believe her brother was being treated fairly because he has mental health issues. Specifically, the prosecutor asked Juror 5003223, "Do you feel that the system, the criminal prosecution system, has treated your brother unfairly?" and she responded, "I think in this situation, because he never committed a crime in the first place, but because he was put—in a jail and had mental health issues, crimes ensued afterwards." Further, Juror 5003223 stated the "charges that [the trial court] mentioned somewhat remind[ed her] of one of [her] brothers in regards to the vehicle," but agreed she "would do [her] best to be as impartial as [she] can be because it is a completely different situation." The prosecutor used her first peremptory challenge against her.

### 2. *Prospective Juror No. 4950820 (Female, Indian-American)*

Juror No. 4950820 (Juror 4950820) lived with her parents and was a student at California State University (CSU) Bakersfield. She was in the process of obtaining her master's degree in social work and worked as an intern with the Department of Human Services. Three or four years ago, Juror 4950820's vehicle was stolen, but it was later recovered. She believed law enforcement did its job during the subsequent investigation.

The prosecutor asked Juror 4950820 whether wrongful convictions would weigh on her mind as a juror and she replied, "[Y]eah, because unless you're, like, absolutely sure and you have all their evidence, then I mean, it's somebody['s] life that if you don't have all the evidence and we are not absolute[ly] sure." She also stated she would consider punishment. When asked whether she would be able to follow the trial court's instructions, Juror 4950820 stated:

"I mean, I am definitely going to try, but I know it would be difficult because of—I mean, I was always, like, believed that a person is innocent until they're proven guilty. So unless there's all the evidence to show otherwise, then—because it's like somebody's life is on the line and that one decision changes everything. So I think it would be hard to."

The prosecutor then asked Juror 4950820 whether she would consider punishment even when the trial court instructs her not to, and she replied, "Yeah." The prosecutor made a for cause challenge against Juror 4950820, but the trial court overruled the challenge. The prosecutor used her second peremptory challenge against her.

### 3. *Prospective Juror No. 5094904 (Male, Hispanic)*

Juror No. 5094904 (Juror 5094904) attended school and lived with his parents. Juror 5094904's father received a "DUI" approximately three years ago, but believed law enforcement treated his father fairly throughout the process. Further, Juror 5094904 had an uncle who was a deputy sheriff in Kern County. However, this relationship would not cause him to favor one side over another.

The prosecutor asked Juror 5094904 if he would have any issue with her "putting up one witness to prove [her] entire case" and he replied, "Well, I think it depends. I would have to hear a little bit more. I just can't base everything on just one witness. I have to have more information, more background information. I would have to know a little bit more." The prosecutor used her third peremptory challenge against him.

### 4. *Prospective Juror No. 4990885 (Female, Hispanic)*

Juror No. 4990885 (Juror 4990885) studied cognitive sciences at the University of California, Merced (UC Merced) and lived with housemates. She worked as a mentor for an organization that assists freshman and sophomore students with their academic studies.

Juror 4990885 had previously served on a jury, but the defendant in that case pled guilty before evidence was presented. She also stated she called 911 "[r]egarding a family situation a year ago" and again called 911 because "[her] neighbors were

7.

fighting." Later on, the prosecutor asked Juror 4990885 whether she would consider punishment and she replied:

> "I mean, it's going to be a little hard for me, but I'll try. A long time ago my brother was in a similar situation where he was accused of stealing a teacher's cell phone. He wasn't even there that day, but his … friend had said he stole it, so the police were trying to get him because he had, like, a bad record, but we ended up having proof that he wasn't even there. So it's like they were going to put him away if he didn't have that proof and, like, that good proof like he wasn't there. But like—whatever. If the DNA—I don't know. I think it's a huge part, to be honest, but I'll try."

She further stated it would be hard not to think of punishment as a juror because "[w]hat if they weren't even there and we're going to send someone innocent to jail or prison." The prosecutor made a for cause challenge against Juror 4990885, but the trial court overruled the challenge. The prosecutor used her fourth peremptory challenge against her.

### 5. *Prospective Juror No. 5019254 (Female, Hispanic)*

Juror No. 5019254 (Juror 5019254) was a single, 18-year-old freshman student at CSU Bakersfield. She had just received her nursing assistant certification and was unemployed. The prosecutor used her fifth peremptory challenge against her.

### 6. *Prospective Juror No. 5101285 (Female, Hispanic)*

Juror No. 5101285 (Juror 5101285) lived with her parents and was a student at CSU Bakersfield. Her cousin was a correctional officer, but she stated the relationship would not cause her to favor one side over the other in the case. Juror 5101285 believed there should be more than one witness before she would feel comfortable to find an individual guilty of a crime. She would "believe it more if there [were] more people to see what happened instead of just believing in the one person" and would feel confident to convict "[i]f they would have all the same story .…" The prosecutor used her sixth peremptory challenge against her.

### 7. *Prospective Juror No. 4949358 (Female, Hispanic)*

Juror No. 4949358 (Juror 4949358) lived with her parents and was a student at "BC" (Bakersfield College).[8] She also worked as a caregiver in an assisted living facility. The prosecutor used her seventh peremptory challenge against her.

### 8. *Prospective Juror No. 5038650 (Male, Hispanic)*

Juror No. 5038650 (Juror 5038650) worked at an organization that attempts to increase crop yields. When he was either eight or 10 years old, law enforcement came to his house without his family's permission. This experience did not influence his feelings toward law enforcement and, in fact, he donated to law enforcement in the past. He also stated that during a seven-day period, he had to testify in court and "fight to get out." He "had to argue in front of a judge against another person" and it was a "scary thing" "just knowing the fact they wanted to keep [him] longer, [he] felt helpless, honestly." The prosecutor used her eighth peremptory challenge against him.

### B. Applicable Law

"Both the state and federal Constitutions prohibit the use of peremptory strikes to remove prospective jurors on the basis of group bias. [Citations.] The now familiar *Batson*/*Wheeler* inquiry consists of three distinct steps. First, the opponent of the strike must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose in the exercise of peremptory challenges. Second, if the prima facie case has been made, the burden shifts to the proponent of the strike to explain adequately the basis for excusing the juror by offering permissible, nondiscriminatory justifications. Third, if the party has offered a nondiscriminatory reason, the trial court must decide whether the opponent of the strike has proved the

---

[8] Immediately before Juror 4949358's response, the prior juror mentioned "Bakersfield [C]ollege" when asked about his background. We presume "BC" is in reference to Bakersfield College.

9.

ultimate question of purposeful discrimination." (*People v. Scott* (2015) 61 Cal.4th 363, 383 (*Scott*).)

At the first step, the defendant "must demonstrate a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." (*People v. Gutierrez* (2017) 2 Cal.5th 1150, 1158.) ""Discriminatory purpose" … implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker … selected … a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group."" (*Hernandez v. New York* (1991) 500 U.S. 352, 360 (plur. opn. of Kennedy, J.).) Nonetheless, the prima facie case is a "'low threshold,'" (*People v. Johnson* (2019) 8 Cal.5th 475, 506 (*Johnson*)), requiring a showing that "discrimination *may* have occurred." (*Johnson v. California* (2005) 545 U.S. 162, 173, italics added.)

Whether a defendant has established a prima facie case by demonstrating the totality of the relevant facts give rise to an inference of discriminatory purpose generally "depends on consideration of the entire record of voir dire as of the time the motion was made .…" (*Scott, supra*, 61 Cal.4th at p. 384.) "A court may also consider nondiscriminatory reasons for a peremptory challenge that are apparent from and 'clearly established' in the record [citations] and that necessarily dispel any inference of bias." (*Ibid.*) "'Though proof of a prima facie case may be made from any information in the record available to the trial court,'" our Supreme Court has found certain types of evidence particularly relevant during the prima facie inquiry. (*People v. Rhoades* (2019) 8 Cal.5th 393, 423.) Specifically, ""the party may show that his opponent has struck most or all of the members of the identified group from the venire, or has used a disproportionate number of his peremptories against the group.""" (*Ibid.*) Additionally, ""the showing may be supplemented when appropriate by such circumstances as the failure of his opponent to engage these same jurors in more than desultory voir dire, or indeed to ask them any questions at all.""" (*Id.* at pp. 423–424.) ""Lastly, … the

10.

defendant need not be a member of the excluded group in order to complain of a violation of the representative cross-section rule; yet if he is, and especially if in addition his alleged victim is a member of the group to which the majority of the remaining jurors belong, these facts may also be called to the court's attention.'"'" (*Id*. at p. 424)

"[W]here (1) the trial court has determined that no prima facie case of discrimination exists, (2) the trial court allows or invites the prosecutor to state his or her reasons for excusing the juror[s] for the record, (3) the prosecutor provides nondiscriminatory reasons, and (4) the trial court determines that the prosecutor's nondiscriminatory reasons are genuine, an appellate court should begin its analysis of the trial court's denial of the *Batson/Wheeler* motion with a review of the first-stage ruling. [Citations.] If the appellate court agrees with the trial court's first-stage ruling, the claim is resolved. If the appellate court disagrees, it can proceed directly to review of the third-stage ruling, aided by a full record of reasons and the trial court's evaluation of their plausibility." (*Scott, supra*, 61 Cal.4th at p. 391, fn. omitted.)

"'Review of a trial court's denial of a [*Batson/Wheeler*] motion is deferential, examining only whether substantial evidence supports its conclusions. [Citation.] "We review a trial court's determination regarding the sufficiency of a prosecutor's justifications for exercising peremptory challenges '"with great restraint."' [Citation.] We presume that a prosecutor uses peremptory challenges in a constitutional manner and give great deference to the trial court's ability to distinguish bona fide reasons from sham excuses."'" (*People v. Miles* (2020) 9 Cal.5th 513, 539.) In proving purposeful discrimination, "'[t]he defendant has the ultimate burden of persuasion.'" (*People v. Hardy* (2018) 5 Cal.5th 56, 75–76.)

**C. Analysis**

Here, trial counsel made a *Batson*/*Wheeler* motion and argued she made a prima facie showing the prosecutor excluded jurors based on both race and gender.[9]  However, the trial court disagreed and denied the motion.  By denying the motion immediately after the prosecutor's statement without further comment, the trial court implicitly found defendant had failed to make a prima facie showing of discriminatory purpose at step one of the *Batson*/*Wheeler* inquiry.  (See *People v. Taylor* (2010) 48 Cal.4th 574, 612–613 [trial court allowing prosecutor to explain reasons for peremptory challenge, followed by immediate denial of the motion did not support an inference that the defendant had made a prima facie showing]; *People v. Howard* (2008) 42 Cal.4th 1000, 1018 [after suggesting a prima facie showing of discrimination has not been made, trial court's invitation to prosecution to justify peremptory challenge does not constitute implicit finding that the defendant established a prima facie case of discrimination].)[10]

In support of her *Batson*/*Wheeler* motion, trial counsel stated that as to the prosecutor's peremptory challenges, "[a]ll eight jurors were minority jurors … seven were Hispanic.  One was, I believe origin [was] Indian American.  And out of the eight jurors that were excluded, six [were] females …."

---

[9]     Although trial counsel made a separate *Batson*/*Wheeler* motion based on gender, defendant did not raise gender discrimination in neither his opening nor reply briefs.  Therefore, for purposes of this appeal, "the claim [was] omitted from the opening brief and thus waived." (*People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9.)

[10]     In those case in which the *Batson*/*Wheeler* motion has been denied at the prima facie stage, our Supreme Court has "repeatedly encouraged trial courts to offer prosecutors the opportunity to state their reasons so as to enable creation of an adequate record for an appellate court, should it disagree with the first-stage ruling, to determine whether any constitutional violation has been established [citations]." (*Scott, supra*, 61 Cal.4th at p. 388.)  Because both parties agree the *Batson*/*Wheeler* motion was denied at the prima facie stage, we proceed with determining whether substantial evidence supports the trial court's finding that defendant did not establish a prima facie showing of discrimination.

For purposes of *Batson*/*Wheeler* motions, Spanish surnames may identify Hispanic individuals, who are members of a cognizable class. (*People v. Trevino* (1985) 39 Cal.3d 667, 686, disapproved on other grounds by *People v. Johnson* (1989) 47 Cal.3d 1194, 1219–1221.)[11] Both parties agree the prosecutor used seven of her eight preemptory challenges on individuals with Hispanic surnames.[12] Defendant contends the prosecutor's exclusion of these seven individuals with Hispanic surnames were based on unlawful discrimination. The People argue the prosecutor did not engage in unlawful discrimination because the exclusion of Hispanic jurors occurred only because there were a substantial number of prospective jurors in the venire with Hispanic surnames.

Because the trial court denied the *Batson*/*Wheeler* motion at the prima facie stage, we consider the entire record before the trial court at the time of its ruling deciding whether a prima facie case was stated. (*People v. Bonilla* (2007) 41 Cal.4th 313, 342.) This includes any "nondiscriminatory reasons for a peremptory challenge that are apparent from and 'clearly established' in the record [citations] and that necessarily dispel any inference of bias." (*Scott, supra*, 61 Cal.4th at p. 384.) Here, 73 percent of the jury venire were Hispanic and the prosecutor subsequently used seven of her eight peremptory strikes against Hispanic individuals (88 percent). On its face, it does appear trial counsel established a prima facie case for purposes of *Batson*/*Wheeler* because seven

---

[11] "Where … no one knows at the time of challenge whether a particular individual who has a Spanish surname is Hispanic, a showing that jurors are being excluded on the basis of surname alone" may nonetheless constitute a prima facie case of impermissible strikes based on association with a cognizable group. (*People v. Trevino, supra*, 39 Cal.3d at p. 686.) "Although the correlation between surname and group membership is not exact, such precision is unnecessary." (*Ibid*.)

[12] Based on discussions regarding the *Batson*/*Wheeler* motion between trial counsel, the prosecutor, and the trial court, we presume seven of the eight jurors excluded were Hispanic or of Hispanic origin. For purposes of analyzing the alleged racial discrimination, we will only consider the seven peremptory challenges used against individuals with Hispanic origin. (See *People v. Neuman* (2009) 176 Cal.App.4th 571, 578 [holding that two or more individuals from cognizable groups cannot be combined into one large group in making a prima facie showing of discriminatory exclusion].)

of the eight strikes involved Hispanic individuals.  (See *Johnson, supra*, 8 Cal.5th at p. 538 [holding that the prima facie case is a "'low threshold,'" requiring a showing that "'discrimination *may* have occurred'"].)  However, because of the large percentage of Hispanic individuals in the venire, and the high likelihood the prosecutor's strikes would involve individuals with Hispanic origin, we cannot infer a discriminatory purpose surrounding the prosecutor's strikes.  (*Scott, supra*, at p. 383.)

We find *Johnson* instructive.  In *Johnson*, the defendant contended "the prosecutor's 'strike rate' establishe[d] a prima facie case of discrimination because he exercised a disproportionate number of peremptory challenges against African-American jurors."  (*Johnson, supra*, 8 Cal.5th at p. 507.)  Specifically, the prosecutor used "20 percent of his strikes on African-American jurors—three of 15—despite the proportion of African-American jurors on the panel being 12 percent—five of 41."  (*Ibid*.)  Our Supreme Court disagreed because "[t]hree of the prosecutor's 17 strikes during regular jury selection (18 percent)—and four of 19 overall (21 percent)—targeted African-American jurors[; t]hese figures 'barely' exceed the 13 percent ratio (seven of 54) of African-American jurors in the venire, and do not by themselves suggest an inference of discrimination."  (*Ibid*.)

Here, the final jury consisted of eight Hispanic jurors (67 percent), with both alternates also being Hispanic.  (*Johnson, supra*, 8 Cal.5th at p. 508 ["We have previously held that the prosecutor's acceptance of a jury panel including multiple [minority] prospective jurors, 'while not conclusive, was "an indication of the prosecutor's good faith in exercising his peremptories, and … an appropriate factor for the trial judge to consider in ruling on a *Wheeler* objection .…"'"].)  The number of Hispanic individuals remaining on the final jury (67 percent) was consistent with the overall Hispanic population of the venire (73 percent).  The large Hispanic population in the venire made it very likely the prosecutor's peremptory strikes would involve individuals with Hispanic origin.  Moreover, although the prosecutor used seven of her

14.

eight peremptory strikes (88 percent) against Hispanic individuals, "[t]hese figures 'barely' exceed" the 73 percent of Hispanic jurors in the venire. (*Id.* at p. 507.) We cannot say this minimal difference suggests an inference of discrimination. (*Ibid.*; see *People v. Reed* (2018) 4 Cal.5th 989, 1000 [finding 46 percent strike rate of African-American jurors compared to 34 percent of African-American jurors in the venire to be insignificant].) Accordingly, we conclude substantial evidence supports the trial court's denial of the *Batson/Wheeler* motion at the prima facie stage because any inference of discriminatory purpose was dispelled by both the large percentage of Hispanic individuals in the venire and final panel, along with the minimal percentage difference between the prosecutor's peremptory strikes and the total Hispanic population present in the venire.

Nonetheless, defendant contends there exists an inference of discriminatory intent behind the prosecutor's peremptory strikes because the "reasons invoked by the prosecutor for exercising peremptory strikes are flatly contradicted by the record, where the prosecutor allowed jurors with those same qualities to remain seated." In the trial court, the prosecutor stated her peremptory challenges were "related to people who have no life experience, who are students, who don't work or live at home." The trial court then denied the motion without prejudice. However, "a reviewing court may not rely on a prosecutor's statement of reasons to support a trial court's finding that the defendant failed to make out a prima facie case of discrimination." (*Scott, supra*, 61 Cal.4th at p. 390, italics omitted.) Nevertheless, in reviewing the entire record, we conclude nondiscriminatory reasons exist for the peremptory challenges that dispel any inference of discrimination. (*People v. Rhoades, supra*, 8 Cal.5th at p. 431 [but where the record reveals "'obvious race-neutral grounds for the prosecutor's challenges to the … jurors in question,' those reasons can definitively undermine any inference of discrimination that an appellate court might otherwise draw from viewing the statistical pattern of strikes in isolation" (italics omitted)].) We review each of the prosecutor's seven peremptory

strikes individually and independently conclude nondiscriminatory reasons exist for each one.

### 1. *Jurors 5003223 and 5038650*

Juror 500323 stated her youngest brother was in the process of being criminally charged in Kern Superior Court and did not believe her brother was being treated fairly based on his mental health issues. The prosecutor asked her whether the justice system had treated her brother unfairly, and she responded, "I think in this situation, because he never committed a crime in the first place .…" Additionally, Juror 5038650 stated when he was eight or 10 years old, the police came to his house without his family's permission. Moreover, he had to testify in court and "fight to get out." He "had to argue in front of a judge against another person" and it was a "scary thing" "just knowing the fact they wanted to keep [him] longer, [he] felt helpless, honestly." Jurors 5003223 and 5038650's negative experiences with the justice system was a race-neutral ground for excusal. (*People v. Booker* (2011) 51 Cal.4th 141, 167; see *People v. Calvin* (2008) 159 Cal.App.4th 1377, 1386 ["skepticism about the fairness of the criminal justice system is a valid ground for excusing jurors"].)

### 2. *Jurors 5094904, 5101285 and 4990885*

Juror 5094904 was a young student and had issues with the single witness rule, which was a vital concept in the prosecutor's case-in-chief. Specifically, he stated, "I would have to hear a little bit more. I just can't base everything on just one witness. I have to have more information, more background information. I would have to know a little bit more." Juror 5101285 stated she would "believe it more if there [were] more people to see what happened instead of just believing in the one person" and would feel more comfortable to convict "[i]f [the witnesses] would have all the same story .…" Lastly, Juror 4990885 stated it would be difficult not to think of punishment during her jury service because "[w]hat if they weren't even there and we're going to send someone innocent to jail or prison." The fact Jurors 5094904, 5101285, and 4990885 would have

16.

difficulty following the law was a race-neutral ground for excusal. (See *People v. Vines* (2011) 51 Cal.4th 830, 850–851, overruled on other grounds in *People v. Hardy, supra*, 5 Cal.5th at pp. 103–104; see also *People v. Howard, supra*, 42 Cal.4th at p. 1017 [prospective juror's reluctance to follow the law was a valid basis for peremptory challenge].)

### 3. *Jurors 5019254 and 4949358*

Juror 5019254 was a single, unemployed, 18-year-old freshmen student at CSU Bakersfield and Juror 4949358 was a student at Bakersfield College and lived with her parents. Jurors 5019254's and 4949358's youth and lack of real-world experience was a race-neutral ground for excusal. (*People v. Lomax* (2010) 49 Cal.4th 530, 575 ["A potential juror's youth and apparent immaturity are race-neutral reasons that can support a peremptory challenge."].)

### 4. *Comparative Juror Analysis*

Defendant also asks this court to compare the prosecutor's peremptory strikes with the individuals who remained on the final jury. Comparative juror analysis "compares the voir dire responses of the challenged prospective jurors with those of similar jurors who were not members of the challenged jurors' racial group, whom the prosecutor did not challenge." (*People v. O'Malley* (2016) 62 Cal.4th 944, 975.) "Where, as here, the comparative analysis was not made at trial, 'the prosecutor generally has not provided, and was not asked to provide, an explanation for nonchallenges.' [Citation.] Therefore, 'an appellate court must be mindful that an exploration of the alleged similarities at the time of trial might have shown that the jurors in question were not really comparable.' [Citation.] When a defendant asks for comparative juror analysis for the first time on appeal, we have held that 'such evidence will be considered in view of the deference accorded the trial court's ultimate finding of no discriminatory intent.'" (*Id*. at p. 976.) Our Supreme Court has also held that under these circumstances, "'a reviewing court need not, indeed, must not turn a blind eye to reasons the record discloses for not

17.

challenging other jurors even if those other jurors are similar in some respects to excused jurors.'" (*Id.* at p. 977.)

In the trial court, trial counsel argued, "there had been two jurors … original jurors" and "[b]oth of them are Caucasian jurors. Juror Number 1, [5024002], and Juror Number 6 [5039146], and they were not excluded, but every other juror that was excluded was non-Caucasian." Juror 5024002 (Juror 5024002) was a sophomore student at CSU Bakersfield, single, lived with his parents, and worked at a drive-thru restaurant. On the other hand, Juror No. 5039146 (Juror 5039146) was employed as an instructional aide at a school. Although it appears both jurors were Caucasian based on their surnames, only Juror 5024002 was comparable based on his youth and lack of experience. However, this single comparative juror is not enough to establish an inference of discrimination.

For the first time on appeal, defendant asks this court to compare the seven excused jurors with Jurors Nos. 5212986, 5164660, 5173217, 5024002, 5126227, 4882392, and 5102093, all who remained on the final jury. Specifically, he argues these jurors were substantially similar to the excused jurors in that they were all college students and thus, the prosecutor's justification for her challenges "smells of pretext."[13] At the outset, "[w]hile we may consider comparative juror analysis for the first time on appeal, the record must be adequate to allow such comparison." (*People v. Bryant* (2019) 40 Cal.App.5th 525, 542, citing *People v. Lenix* (2008) 44 Cal.4th 602, 622.) Here, trial counsel's failure to raise these comparisons below denied the prosecutor an opportunity to make such a record. (*People v. Bryant, supra*, at p. 542.) However, even when comparing these seven seated jurors with the seven challenged jurors, we would still conclude no inference of discrimination exists. First, Jurors 5164660, 5173217, 5126227,

---

[13]     In his opening brief, defendant concedes "[t]he jury pool itself had many college students," which created a substantial likelihood the prosecutor's challenges would involve college student jurors, irrespective of race or ethnicity.

18.

4882392, and 5102093 were all Hispanic, making any comparison unnecessary. (*People v. O'Malley, supra*, 62 Cal.4th at p. 975 [comparative juror analysis "compares the voir dire responses of the challenged prospective jurors with those of similar jurors who were *not* members of the challenged jurors' racial group" (italics added)].) Second, although Juror 5024002 was substantially similar to the excused jurors, Juror 5212986 stated he wanted to be a surgeon. The prosecutor may have concluded Juror 5212986's desire to work in medicine dispelled any concern she may have had with his apparent youth. Therefore, there exists only one juror (Juror 5024002) who was substantially similar to the excused jurors and thus, even if we engaged in comparative juror analysis, the prosecutor's peremptory challenges do not give rise to an inference of a discriminatory purpose.

### 5. *Assembly Bill No. 3070*

Defendant further directs this court to recently enacted Assembly Bill No. 3070 (2019–2020 Reg. Sess.) (Assembly Bill 3070), which addressed concerns with the current *Batson/Wheeler* framework. (See Stats. 2020, ch. 318, § 2.) The legislation added section 231.7 to the Code of Civil Procedure and imposed new limits on peremptory challenges in criminal cases. (Code Civ. Proc., § 231.7, added by Stats. 2020, ch. 318, § 2.) It amended the *Batson/Wheeler* analysis such that the party whose exercise of a peremptory challenge has been challenged must state his or her reasons for exercising the challenge. (Code Civ. Proc., § 231.7, subd. (c).) Additionally, the statute identifies a number of reasons for exercising a peremptory challenge that are "presumed to be invalid unless the party exercising the peremptory challenge can show by clear and convincing evidence that an objectively reasonable person would view the rationale as unrelated to a prospective juror's race [or other protected class] … and that the reasons articulated bear on the prospective juror's ability to be fair and impartial in the case[.]" (*Id*., subd. (e).) These presumptively invalid reasons include "[e]xpressing a distrust of or having a negative experience with law enforcement or the criminal legal system" and "[h]aving a

19.

close relationship with people who have been stopped, arrested, or convicted of a crime." (*Id.,* subd. (e)(1), (3).) However, this statute applies only to trials in which jury selection begins *on or after* January 1, 2022. (*Id*., subd. (i); see *People v. Collins* (2021) 60 Cal.App.5th 540, 550, fn. 6 (*Collins*) [newly enacted legislation only applies to jury selection beginning on or after January 1, 2022].)

Although defendant concedes Assembly Bill 3070 does not apply to this case, he nonetheless contends "the spirit of the new law, and its anticipated application, are in harmony with the 'totality of reasons' analysis set forth in *Collins*." In *Collins*, this court reiterated the long-standing principle that "'[w]hen the trial court concludes that a defendant has failed to make a prima facie, we review the voir dire of the challenged jurors to determine whether the totality of the relevant facts supports an inference of discrimination,'" which is exactly what we did in this case. (*Collins, supra*, 9 Cal.App.5th at p. 551.) The large percentage of Hispanic individuals within the venire, along with the neutral reasons discussed in depth above, dispel any inference of discrimination by the prosecutor. Accordingly, the trial court correctly denied the *Batson/Wheeler* motion because trial counsel did not establish a prima facie showing of discrimination.[14]

## II.    Defendant is Entitled to Resentencing

The parties agree, and we concur the changes brought about by Senate Bill 567 and Assembly Bill 124 apply retroactively to defendant's case. (*In re Estrada* (1965) 63 Cal.2d 740, 745; see *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.) The parties disagree, however, on whether the failure to apply the changes to newly amended section 1170 are harmless. As we shall explain, because the trial court failed to articulate

---

[14]    Because we conclude a prima facie showing of discrimination has not been established, we do not address defendant's argument that remand is necessary for the trial court to procced with the second and third stages of the *Batson/Wheeler* framework. (*Scott, supra*, 61 Cal.4th at p. 391 ["If the appellate court agrees with the trial court's first-stage ruling, the claim is resolved."].)

its reasoning in imposing the upper term sentence, we cannot say the trial court's failure to apply the amended statute to defendant's case was harmless.[15]

---

**15**    In their opening brief, the People ask this court to apply the "'reasonable probability'" prejudicial standard of *People v. Watson* (1956) 46 Cal.2d 818, 836, to this case.

As of today, the Courts of Appeals are currently split on the applicable standard for assessing prejudice in these types of cases, and the issue is currently pending before our Supreme Court. (*People v. Lynch* (May 27, 2022, C094174 [nonpub. opn.], review granted Aug. 10, 2022, S274942.) The primary disagreement is between *People v. Flores* (2022) 75 Cal.App.5th 495 (*Flores*), a decision by the First District, Division Three, and *People v. Lopez* (2022) 78 Cal.App.5th 459, a decision by the Fourth District, Division One. *Flores* concluded remand for resentencing is unnecessary if the reviewing court can determine beyond a reasonable doubt the jury would have found true at least one aggravating factor (*Flores, supra*, at p. 501), and *Lopez* concluded a remand is necessary unless the reviewing court can determine beyond a reasonable doubt that (1) the jury would have found true all the aggravating factors the trial court cited or (2) the trial court would have reached the same decision even if it knew it could not properly rely on all the factors it did (*Lopez, supra*, at p. 467, fn. 11).

This court concluded that since the type of error at issue has both federal and Constitutional and state law dimensions, "the correct standard for harmless error lies between the standards articulated in *Flores* and *Lopez* …." (*People v. Dunn* (2022) 81 Cal.App.5th 394, 409, review granted Oct. 12, 2022, S275655 (*Dunn*).) Specifically, *Dunn* described the standard for assessing prejudice as follows:

> "The reviewing court determines (1)(a) beyond a reasonable doubt whether the jury would have found one aggravating circumstance true beyond a reasonable doubt and (1)(b) whether there is a reasonable probability that the jury would have found any remaining aggravating circumstance(s) true beyond a reasonable doubt. If all aggravating circumstances relied upon by the trial court would have been proved to the respective standards, any error was harmless. If not, the reviewing court moves to the second step of *Lopez*, (2) whether there is a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances provable from the record as determined in the prior steps. If the answer is no, the error was harmless. If the answer is yes, the reviewing court vacates the sentence and remands for resentencing consistent with section 1170, subdivision (b)." (*Dunn, supra*, 81 Cal.App.5th at pp. 409–410, fn. omitted, review granted.)

However, because the trial court in this case did *not* explain its reasons for imposing the upper term, which it was required to do (§ 1170, subd. (c)), we need not address the appropriate standard of prejudice to apply in this case.

## A. Additional Factual Background

During defendant's sentencing hearing, the trial court stated the following before imposition of sentence:

"I have reviewed the sentencing report. [¶] I am going to—I understand—

"[Trial counsel], I appreciate your comments but I do feel that the recommendation is appropriate. I am going to adopt the recommendation.

"With respect to Count 1, Vehicle Code Section 10851[, subdivision] (A), the two [Penal Code section] 665[, subdivision] (A)s, probation is denied. The defendant is sentenced to the Department of Corrections for the upper term of four years. The defendant's privilege to operate a motor vehicle will be suspended by the DMV pursuant to Section 13357 of the Vehicle Code commencing January 9, 2020, for a period of one year. [¶] … [¶]

"With respect to Count 3, Vehicle Code Section 2800.2, probation is denied. The defendant is sentenced to the Department of Corrections for the term of eight months which is one third the mid term and that sentence is to be served fully consecutive to the sentence imposed with respect to Count 1 for a total fixed term of four years, eight months. The defendant's privilege to operate a motor vehicle will be suspended by the DMV pursuant to Penal Code Section—Vehicle Code Section 13350 commencing January 9, 2020, for a period of one year. Again the Court adopts and incorporates the fines, fees, and assessments as indicated."

## B. Applicable Law

Prior to Senate Bill 567, section 1170, subdivision (b) provided as follows:

"When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court. At least four days prior to the time set for imposition of judgment, either party or the victim, or the family of the victim if the victim is deceased, may submit a statement in aggravation or mitigation. In determining the appropriate term, the court may consider the record in the case, the probation officer's report, other reports, including reports received pursuant to Section 1203.03 and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing. The court shall select the term which,

22.

in the court's discretion, best serves the interests of justice.  The court shall set forth on the record the reasons for imposing the term selected and the court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law.  A term of imprisonment shall not be specified if imposition of sentence is suspended."  (§ 1170, former, subd. (b).)

As amended effective January 1, 2022, section 1170, subdivision (b) provides in relevant part, "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term …."  (*Id.,* subd. (b)(1).)  "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term … exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial…."  (*Id.,* subd. (b)(2).)

Further, Assembly Bill 124 sets a presumption the trial court will impose the lower term under enumerated circumstances, such as where an offender's childhood trauma or youth were contributing factors in the offense.  The legislation adds subdivision (b)(6) to section 1170 and states:

"(6)    Notwithstanding paragraph (1), and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense:

"(A)   The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence.

"(B)   The person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense.

"(C)   Prior to the instant offense, or at the time of the commission of the offense, the person is or was a victim of intimate partner violence or

23.

human trafficking."  (§ 1170, subd. (b)(6), added by Stats 2021, ch. 695,
§ 5.1, eff. Jan. 1, 2022.)

Section 1016.7, subdivision (b), states, "A 'youth' for purposes of this section includes any person under 26 years of age on the date the offense was committed."

### C.    Analysis

The People contend any error by the trial court was harmless because a jury would have found at least one of the aggravating factors relied on the by the trial court to be true beyond a reasonable doubt.  Specifically, the People argue defendant's admissions to six prior convictions for driving on a suspended or revoked license (Veh. Code, § 14601.2, subd. (d)(2)) and the trial court's true findings regarding his two prior felony auto theft convictions (§ 666.5, subd. (a)), along with his criminal history, all qualify as aggravating factors justifying the trial court's imposition of the upper term.[16]  However, this argument fails because without an articulation of the trial court's *reasons* for imposing the upper term, we cannot evaluate whether the trial court would impose the same sentence despite the legislative changes.

"'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court.  [Citations.]  A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.'  [Citation.]  In such circumstances, [our Supreme Court has] held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'"  (*People v. Gutierrez*

---

[16]    Apart from the admitted and proven prior convictions, both parties assume the trial court imposed the aggravated term based on defendant's criminal history, as stated in the probation report.  However, for us to conclude the trial court considered defendant's criminal history before imposing the aggravated terms requires speculation on our part, which we will not do. (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 280 ["more than appellate speculation about a hypothetical jury's action" is required].)

(2014) 58 Cal.4th 1354, 1391.) Section 1170 requires the trial court to state its reasons for its sentencing choice on the record (*id.,* subd. (c)), and having failed to do so, we cannot determine whether the trial court would have reached the same sentence under the amendments made by Senate Bill 567. Accordingly, we will reverse defendant's sentence and remand for a resentencing hearing.

We do not address the merits of defendant's claim regarding the application of Assembly Bill 124 to his sentence in light of our decision remand is necessary under Senate Bill 567. (*People v. Valenzuela* (2019) 7 Cal.5th 415, 424–425 ["the full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant"]; accord, *People v. Buycks* (2018) 5 Cal.5th 857, 893 ["the 'full resentencing rule'"].)

## DISPOSITION

Defendant's sentence is vacated and this matter is remanded for resentencing consistent with this opinion. Thereafter, the trial court is directed to file an amended and corrected abstract of judgment and transmit copies thereof to the appropriate authorities. In all other respects, the judgment is affirmed.


MEEHAN, J.
WE CONCUR:


LEVY, Acting P. J.


FRANSON, J.


25.